## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY CIOE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | FILED: MAY 25, 2008 |
| v. | ) ) No. ) | 08CV3039      LI<br>JUDGE MANNING |
| SPRINT NEXTEL CORPORATION and DOES 1-20, | ) ) ) | MAGISTRATE   JUDGE SCHENKIER |
| Defendants. | ) ) ) ) | |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, and alleges as follows upon personal knowledge as to his own acts, and as to all other matters upon information and belief following investigation by his attorneys, against Defendants, Sprint Nextel Corporation and Does 1-20, (collectively, "Sprint" or "Defendants"):

### INTRODUCTION

1.      Sprint unscrupulously subjects its customers to unauthorized Short Message Services (SMS) charges. SMS is a technology that permits the sending or receipt of "text messages" on mobile phones and that also provides a vehicle for third-parties to deliver content and services for a premium price. SMS has become a burgeoning source of revenues for the mobile telephone service industry. Sprint has pocketed a chunk of SMS-related revenues from charges that its mobile phone customers paid but never authorized; this case seeks relief for these Sprint customers.[1]

---

[1] In this Complaint, "Sprint mobile phone customers" or "Sprint customers" means a any person or entity that had a mobile phone account, under "Sprint," "Sprint PCS," "Nextel" or other brand names, provided or owned in whole or part by Sprint.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff is a citizen of the State of Illinois, and received unauthorized SMS charges that Defendants caused to be charged to his Sprint mobile telephone service bill between January and March 2007.

3. Defendant Sprint Nextel Corporation has its principle place of business in the State of Kansas, transacts substantial business in this judicial District, provides mobile phone services and accounts, networks, infrastructure, technology, and/or mobile phones to Sprint customers and to other companies and Doe Defendants that serve Sprint customers.

4. Doe Defendants 1-20 are officers, owners employers, agents, affiliates, sister entities and/or predecessors or successors in interest of Sprint Nextel Corporation or Sprint, carriers or mobile phone service providers owned by Sprint or that lease or use Sprint's technology, SMS infrastructure, networks, or other support, and/or mobile content providers and billing aggregators, who are liable for herein alleged conduct and charges, whose true identities are to be ascertained following discovery.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d). Based on the total value of the claims of Plaintiff's and the other Class members, the total amount in controversy in this case exceeds $5,000,000. Plaintiff and the Class seek damages in excess of $5,000,000.

6. Venue is proper pursuant to 28 U.S.C. § 1391: a substantial part of the acts and omissions giving rise to Plaintiff's and Class and Subclass members' claims occurred in this judicial District, and Sprint Nextel Corp. transacts continuous and substantial business in this District.

**SUBSTANTIVE ALLEGATIONS**

7.      Short Message Services (SMS) is a technology enabling short text messages to be sent or received on mobile phones.

8.      Sprint serves far more than 40 million customers directly, and other customers indirectly. To use its services, Sprint sold its customers including Plaintiff mobile telephones that are, by default, equipped and enabled to receive SMS—including the unauthorized SMS at issue.

9.      SMS are widely used to communicate "text messages" from one mobile phone user to another. It is also a medium which delivers "premium text messages," i.e., mobile content and services provided by third-parties, such as text message news alerts, horoscope or weather reports, financial information, and cell phone ring tones and screen logos. In exchange for receiving such premium content or service, recipients of premium text messages are charged a premium (e.g., far more than an ordinary text message charge), which may be typically divided between the provider of the premium text message, the "middleman" party which helps transmit and bill the premium text message, and the mobile phone carrier (e.g., Sprint Nextel Corp.).

10.     Sprint contracts with such third-parties to facilitate the delivery and billing of premium text messages to its customers *en masse*. Customers receive the charge all-too-easily—if the middlemen or the purported content provider has the customer's mobile phone number—yet Sprint does not bother to adequately check that the charge is authorized.

11.     Sprint knows that many premium text message charges are unauthorized and unsolicited.

12.     The growth of premium text message services has in recent years accelerated at a rampant pace. Juniper Research has reported that as many as 10 percent of all U.S.-based mobile-phone subscribers having already received and been annoyed by SMS spam. (http://www.sci-tech-

today.com).

13. Rather than offer its customers a means to decline receipt of SMS messages, services, and content – either in advance or after the fact – Sprint requires customers to pay SMS charges, because Sprint values the charges as a source of revenue. Sprint has even charged Class members for unsolicited Sprint advertisements sent via SMS.

14. Defendants caused a host of text messages and premium text messages to be billed to the mobile telephone accounts of Plaintiff and the Class, who never authorized such charges or contracted to receive the charge.

15. Defendants received revenues from the SMS messages and services imposed on Plaintiff and the Class.

*Allegations as to Plaintiff's Experience*

16. In January 2007, Plaintiff received a $9.99 charge on the "Premium Services (Non-Telecom)" portion of his Sprint ("Sprint PCS") monthly mobile phone service bill. But, he never consented to the charge or to receive the service it purported to deliver.

17. Plaintiff's Sprint bill incomprehensibly describes the charge as "26706 Nevis Mobl Alt," which is purportedly for an unidentified premium service.

18. Plaintiff never authorized or asked to receive this $9.99 charge, or any text message or service purportedly associated with it. Nor did Plaintiff knowingly sign-up for any SMS designated by the charge or receive or access any premium service associated with the charge.

19. Plaintiff's charge purports to be from a provider named "Nevis Mobile" that bills via premium text messaging. On information and belief Nevis Mobile is based in a island nation that promotes itself to businesses by offering to establish offshore corporations and promising that corporation records will remain anonymous and secret.

20. Sprint billed Plaintiff $9.99 for a premium text message service associated with the 26706 short code, without first requesting or receiving proper verification/authorization of the charge.

21. On March 7, 2007, Plaintiff received an unsolicited text message from the same number, 26706, stating as follows: "Enter PIN Code: 0497 at enmob.com to begin Movie. $9.99/mo. To stop, text back STOP or call 8886489524." The express language of this text message does not authorize the $9.99 charge for the text message itself (i.e., the customer is supposed to then enter a PIN code online in order to be charged). Plaintiff never, as was stated in the above-described text message: (a) visited the web site, enmob.com, (b) entered the PIN code on said web site, and/or (c) received the Movie or access to the Movie or the purported service for which he was billed.

22. Defendants proximately caused a "Nevis Mobile" premium text message to be transmitted to Plaintiff's mobile phone and to be charged to Plaintiff's monthly Sprint mobile phone bill, and received a portion of the charge, which Plaintiff paid under protest.

23. Actually, before the time that Defendants caused said text messages to be transmitted and/or billed to Plaintiff and other Class members, Defendants had received a multitude of complaints from customers questioning and protesting the unauthorized cramming of similar charges for text messages from Nevis Mobile, number 26706, and/or for other premium text message services and unwanted text messages.

24. Sprint continued to bill for and allow unauthorized SMS to be passed on to Plaintiff and other mobile phone users, in reckless disregard of the fact that Plaintiff and many other mobile phone users lodged prior complaints with Defendants stating that the text messages and associated charges were unauthorized or unsolicited, without bothering to obtain verification of user authorization of the charge, and despite the fact that Plaintiff and other mobile phone users had never

enrolled in Nevis Mobile's services or in other premium text message services and never asked to receive text messages.

25.     Sprint refused to reverse the charge Plaintiff received for "Nevis Mobl." Sprint advised Plaintiff that he must pay the $9.99 charge in order to avoid disconnection of his Sprint service (upon which Plaintiff depended for his livelihood and vocation and which was Plaintiff's only telephone service of any kind).

26.     Sprint does not, as a matter of course block SMS; to the contrary, it receives revenues arising out of consumers' payments for SMS including those that are unauthorized.

27.     Sprint falsely represented to its customers that they are legally obligated to pay for the SMS billed, without bothering to adequately verify that the charges were requested or authorized.

### *FTC Guidance on Telephone Charge "Cramming"*

28.     The Federal Trade Commission (FTC) has specifically targeted the practice of "cramming" charges for so-called optional services on telephone bills as a popular, but illegal practice in violation of Section 5 of the Federal Trade Commission Act.

29.     Teresa M. Schwartz, Deputy Director of the FTC's Bureau of Consumer Protection, has noted publicly, "The problem of cramming represents the latest in a growing array of scams that exploit new telephone technologies and the deregulated telephone billing system. . . .In the deregulated telecommunications market, the billing system is now used to bill for a range of telephone-related products and services." http://www.ftc.gov/opa/1998/07/cramming.htm.

30.     The FTC has successfully brought actions against billing aggregators who converted information from vendors (such as Nevis Mobile) into electronic format enabling charges to be crammed onto phone bills.

*Defendants' Disregard for Industry Standards*

31.  The Mobile Marketing Association ("MMA") is the industry trade group for SMS and premium text message services.

32.  The MMA, which includes Sprint, have developed an industry standard code of conduct for implementing SMS programs and premium text messaging services in the United States, which are (and purport to be) a compilation of accepted industry practices and mobile phone carrier policies based upon regulatory guidance aimed at consumer protection.

33.  The MMA provides that all parties involved in premium text message services or active shortcode programs are to be familiar and compliant with this code of conduct in letter and spirit.

34.  The MMA code of conduct requires Sprint to be compliant, *inter alia*, with the following:

  a.  that subscribers approve SMS (including text messages or other content delivered via mobile phone), before receiving the SMS (including text messages or other content);

  b.  that customers be provided an opportunity to opt-in to an SMS program;

  c.  that premium SMS inclusive of the $9.99 charges billed for purported services to Plaintiff require an affirmative double opt-in, by way of text message, to ensure consent to and authorization for the charge;

  d.  that the content provider/aggregator track opt-ins to use the service;

  e.  that the aggregator notifies the carrier (*e.g.,* Sprint) within five business days of receipt of a complaint or dispute of the validity of the charge;

  f.  that all material terms of an SMS, including whether the service is a subscription and subscription length, be clearly communicated; and

  g.  that the consumer must manually select acknowledgement of terms and conditions of the SMS.

35.  Sprint failed to implement SMS business practices consistent with such MMA code

provisions, and failed to properly verify consent to receive the SMS charges that it billed.

36. Nonetheless Sprint quietly pocketed part of the monies the Plaintiff paid for the unauthorized SMS "Nevis Mobl" charge.

37. Sprint chose to bill Plaintiff and the Class repeatedly for charges that were neither authorized nor consented to as the MMA code requires, because doing so inured to its revenues in the growing premium text messaging industry.

## FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

38. Defendants, at relevant times and to date, were aware of the aforementioned facts, concealed disclosure of same from Plaintiff and the Class and intended that they rely on said concealment at all relevant times, as part of Defendants' scheme to maximize profits from SMS charges.

39. Nor could Plaintiff and other members of the Class have reasonably discovered the aforementioned facts at an earlier date by the exercise of reasonable due diligence because of the practices employed by Defendants to avoid detection of, and to fraudulently conceal, the aforementioned facts.

40. Moreover, Defendants created the impression that the SMS charges at issue are valid, third-party charges, but at all relevant times concealed that they virtually kept a portion of the charges, i.e., that the charges inured to their benefit, and that the charges are not properly verified, that many such charges are unauthorized, that they permit the charges to be all-too-easily billed to customer accounts, and that customer accounts and phones are by default set up to receive premium text messages and charges.

41. As a result of Defendants' fraudulent and inequitable conduct, applicable statutes of limitations governing Plaintiff's and the Class members' rights of action have been tolled.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action individually, and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of others similarly situated, defined as follows:

> Class: All persons and entities in the United States who received a charge on their Sprint mobile telephone bill for text messages or third-party products or services that they did not authorize.[2]
>
> Illinois Subclass: All persons and entities in the State of Illinois who received a charge on their Sprint mobile telephone bill for text messages or third-party products or services that they did not authorize.
>
> Nevis Mobile Subclass: All persons and entities in the United States who received a charge on their Sprint mobile telephone bill, that they did not authorize, and that Sprint billed alternatively as "Nevis Mobl," "Nevis Mobil," "Nevis," "enmob.com," "enmob," or "26706".

Defendants, Plaintiff's counsel, and any member of the judiciary who has presided over this matter are excluded from the Class and each Subclass.

43. The Class and each Subclass is so numerous that joinder of all members is impracticable.

44. Questions of fact or law common to the Class predominate over any questions affecting only individual members.

45. Plaintiff's claims are typical of the claims of the members of the Class.

46. Plaintiff will fairly and adequately protect the interest of the Class, and is a member of the Class and each Subclass. All Class members will receive appropriate protection of their interests by Plaintiff, who is seeking relief consistent with, and not antagonistic to the relief to be sought by the putative Class members, and who is represented by competent, qualified attorneys experienced in class action litigation.

---

[2] Reference herein to the Class or to Class members includes the members of each Subclass. Plaintiff reserves the right to amend the Class and Subclass definitions following discovery.

47. Given the large number of class members, the relatively small amount per claim, the questions of fact and law common to the entire Class, and the potential for varying adjudications of disputes raised by other members of the Class, use of the class action device in this case would be superior to the maintenance of individual actions and entirely manageable.

## COUNT I

**Violations of the Illinois Consumer Fraud Act and Similar State Acts**

**(DECEPTION)**

48. Plaintiff realleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

49. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS § 505 *et. al*, prohibits false, deceptive, misleading and unfair acts or practices, "…including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…." 815 ILCS § 505/2. Other states' very similar consumer protection statutes provide virtually the same protection against deceptive practices for Sprint customers.

50. The ICFA and similar state statutes are designed to protect consumers against deceptive, false or misleading business practices.

51. Sprint caused Plaintiff and Class members to pay and/or incur debts for the above-described unauthorized, unsolicited charges for text and/or premium text messages including mobile content products and services ("the charges").

52. Sprint, when imposing the charges and when contracting with Plaintiff and the Class to use its services, failed to meaningfully offer any opportunity to disable receipt of SMS, failed to

disclose that such charges may be incurred by the customer, misrepresented the charges as valid third-party charges, failed to disclose that the charges are invalid, unauthorized and unsolicited, failed to disclose that Sprint pads its revenues from such charges, failed to disclose that it does nothing to ensure that the charges are adequately verified or valid, and/or ignored a litany of complaints questioning the charges. Defendants intended that Plaintiff and the Class rely on such conduct.

53. Plaintiff and the Class were damaged as a result of Sprint's above-described fraudulent, misleading and deceptive conduct, which violates the ICFA and similar state statutes.

## COUNT II

### Violations of the Illinois Consumer Fraud Act and Similar State Acts

### (UNFAIRNESS)

54. Plaintiff realleges in incorporates by reference the preceding paragraphs as if set forth fully herein.

55. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS § 505 *et. al*, and similar state statutes prohibit unfair conduct and business practices in the stream of commerce, including the conduct complained of herein. *E.g.,* 815 ILCS § 505/2.

56. Defendants' imposition of said charges, and collection of monies paid and/or assertion of debts for these charges is unethical, immoral, oppressive, causes substantial injury, violates public policy—and is patently unfair in violation of the ICFA and similar state statutes.

57. Sprint customers have no meaningful choice but to have the charge levied and/or to pay the charge or incur the debt.

58. Plaintiff and the Class were damaged as a proximate result of Defendants' unfair conduct.

## COUNT III

### Violations of the Illinois Consumer Fraud Act

### (On Behalf of Illinois Subclass Only)

59.     Plaintiff realleges in incorporates by reference the preceding paragraphs as if set forth fully herein.

60.     To the extent that Sprint contends it is the third-party billing agent for unauthorized premium text message charges incurred by Plaintiff and the Illinois Subclass, the ICFA requires Sprint to "provide a contact telephone number and brief description of the service for all third-party billings on the consumer's bill, to the extent allowed by federal law, or through a customer service representative." 815 ILCS § 505/2WW (2007).

61.     Sprint's above-alleged conduct does not comply with § 505/2WW. Such conduct, coupled with its practice of refusing to credit or refund unauthorized SMS charges, makes it virtually impossible for Plaintiff and other Illinois Subclass members to obtain refunds, credits, or adjustments of the unauthorized charges from the originator or provider of the charge or the third-party billing aggregator.

62.     Sprint intended that Plaintiff and the Illinois Subclass rely on its concealment and omission of a contact telephone number and brief description of the premium text message services, thereby ensuring that it would pocket a portion of the unauthorized charges.

63.     By failing to provide this information and to verify the unauthorized SMS charges, Sprint contravened § 505/2WW, industry standards and the Mobile Marketing Association Code.

64.     Sprint's failure to provide such information, to verify the charges, to safeguard against such charges and its above-described conduct causes substantial injury and is unethical, immoral, oppressive, violates public policy, and deceptive in violation of the ICFA.

65. Plaintiff and the Illinois Subclass were damaged as a proximate result of Sprint's aforesaid acts, omissions, concealments, and unfair conduct.

## COUNT IV

### Breach of Contract

66. Plaintiff realleges in incorporates by reference the preceding allegations as if set forth fully herein.

67. Plaintiff and the other Class members entered into a standardized contract with Sprint to subscribe to its mobile telephone service.

68. At all relevant times, Plaintiff and the Class fulfilled the obligations required of them pursuant to Sprint's standardized contract.

69. Sprint breached the contract by charging Plaintiff and Class for SMS, including text messages and premium text messages, to which they never consented and which are not authorized by or in the contract.

70. Sprint, by charging Plaintiff and the Class for unauthorized text messages and premium text messages, also breached its implied duty of good faith and fair dealing to Plaintiff and the Class that is part of the contract, and engaged in unconscionable conduct in performance of the contract that is prohibited by law.

71. The contract, *e.g.*, the provisions requiring customers to pay monthly charges, does not create a reasonable expectation that Plaintiff and the Class would be required to pay for unauthorized SMS charges, which in fact no reasonable consumer would expect.

72. Sprint had discretion to ensure that Plaintiff and the Class would not receive or pay such charges. Instead, Sprint opted to impose the charges and collect.

73. As a result, Plaintiff and the Class have been damaged and Sprint was unjustly

enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

A. Certify the Class, the Illinois Subclass, and the Nevis Mobile Subclass, and appoint Plaintiff as Class Representative and Plaintiff's counsel as class counsel.

B. Find that Sprint breached its contracts with the Class members and violated the Illinois Consumer Fraud Act and similar state acts as set forth herein.

C. Award damages to Plaintiff and the Class including interest thereon, and reasonable attorneys' fees and costs.

D. Require each Defendant to account for all revenues/profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and establish a constructive trust for said monies until further order of the Court.

E. For such other relief as the Court deems appropriate.

Respectfully Submitted,

JEREMY CIOE, individually and on behalf of all others similarly situated

By:     /s/ Ilan Chorowsky
Ilan Chorowsky (Ill. Reg. #6269534)
**Progressive Law Group LLC,** *Of Counsel*
1130 N. Dearborn Street, Suite 310
Chicago, IL 60610
(312) 643-5893 (voice)

Frank Jablonski (Wis. S.B.N. #1000174)
**Progressive Law Group LLC**
354 W. Main Street

Madison, WI 53703
(608) 258-8511 (voice)
*pro hac vice petition to be filed*

**Attorneys for Plaintiff**